UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANS BAY CABLE LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>M/V OCEAN LIFE, et al.,<br><br>  Defendants. | Case No. 14-cv-04854-JD<br><br>**ORDER RE MOTION TO STRIKE AND CONTINUING HEARINGS**<br><br>Re: Dkt. No. 94 |

This is an admiralty case for damage allegedly caused to plaintiff Trans Bay Cable ("TBC"), the owner of a submarine power cable, when the defendant vessel M/V Ocean Life "suffered a loss of propulsion and dropped both anchors." Dkt. No. 58 ¶ 7. With the Court's consent (Dkt. No. 57), plaintiff filed a first amended complaint, which is the operative complaint, on June 15, 2015. Dkt. No. 58. In response, defendants filed an answer and counterclaim on July 9, 2015. Dkt. No. 84. That pleading contained a demand that defendants' new counterclaim be tried to a jury -- the first jury demand asserted by any party in this case. *Id.* at 6 ¶ 6. It also included nine affirmative defenses. *Id.* at 4-5.

Before the Court is plaintiff TBC's motion to strike defendants' counterclaim, jury demand and certain affirmative defenses. Dkt. No. 94. The Court grants in part and denies in part the motion.

**DISCUSSION**

**I.  DEFENDANTS' NEGLIGENCE COUNTERCLAIM**

The first issue for decision is whether a counterclaim against TBC first asserted in the answer filed on July 9, 2015, is timely. Dkt. No. 84.[1] The counterclaim states that plaintiff "failed

---

[1] The counterclaim is alleged by defendants Alassia Newships Management, Inc. and LifeOne Shipping Corp. only, and not by defendant M/V Ocean Life. *See* Dkt. No. 84 at 1.

1   to exercise due care to properly place, protect, and maintain the cable by failing to properly bury
2   the cable," and that "[a]s a direct result of [this] negligent failure . . . , defendants and
3   counterclaimants have suffered damages in an amount in excess of $200,000." *Id*. at 3-4 ¶¶ 11,
4   15. The counterclaim is before the Court on diversity jurisdiction. *Id*. ¶ 9.

5         TBC's main argument for striking the counterclaim is that it comes a day late and a dollar
6   short. TBC says defendants had until June 29, 2015 at the latest to "amend their pleadings" under
7   the Court's scheduling order, Dkt. No. 61 at 1, but defendants did not file until July 9, 2015. TBC
8   argues that there is no "good cause" for excusing this miss of a deadline set by the Court under
9   Rule 16(b) of the Federal Rules of Civil Procedure because the "new counterclaim raises the very
10  same issues as" those in defendants' prior affirmative defenses, which were filed many months
11  before. Dkt. No. 94 at 6.

12        Defendants do not dispute that the negligence counterclaim is "similar [to an] affirmative
13  defense in their answer to plaintiff's original complaint." Dkt. No. 95 at 4. *See*, *e.g.*, Dkt. No. 34
14  at 3 ¶ 1 ("For a first affirmative defense, LifeOne alleges that any damage and/or loss to Plaintiff
15  was caused either solely or partially by the negligence and carelessness of Plaintiff, its agents or
16  servants, or by the negligence of persons other than LifeOne, the M/V OCEAN LIFE, or Alassia
17  NewShips Management Inc."). But defendants contend that the counterclaim is "newly acquired"
18  because "they did not receive sufficient facts to support their claim until July 2015 when plaintiff
19  produced relevant documentation." Dkt. No. 95 at 4.

20        When a scheduling order has been violated, as plaintiff argues has happened here, the
21  Court first analyzes whether the violating party has shown "good cause" to modify the scheduling
22  order under Rule 16(b) of the Federal Rules of Civil Procedure. If so, the Court then evaluates a
23  request to amend the pleadings under Rule 15. *See Johnson v. Mammoth Recreations, Inc.*, 975
24  F.2d 604, 609 (9th Cir. 1992). For the first part of the inquiry under Rule 16, the primary
25  consideration for "good cause" is diligence. *Id*. "Leave to amend is generally within the
26  discretion of the district court," *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996),
27  and Rule 15(a)(1)(B) states that "[t]he court should freely give leave when justice so requires."
28

By a thin margin, defendants have established "good cause" under Rule 16(b)(4). As TBC points out, it is surprising that defendants have not even submitted a supporting declaration with their opposition brief attesting to the facts set forth in that brief. *See* Dkt. No. 98 at 5. But defense counsel did represent in the brief (which was signed under penalty of sanctions under Rule 11) that defendants did not receive the documents that they believed were sufficient to "substantiate [their] counterclaim" until "June and July of 2015," and that "[t]hereafter, defendants promptly asserted their counterclaim." Dkt. No. 95 at 4. The Court accepts that representation and will hold counsel to it.

Defendants' confidence in alleging a "similar" affirmative defense earlier in the case does not impeach or undermine the representation that they did not have enough evidence to support a counterclaim until June/July of 2015. It is true that there should have been no meaningful difference in pleading standards for a counterclaim versus an affirmative defense because none exists. But even if defendants' affirmative defense arguably jumped the gun, they certainly should not have made a false start worse by asserting an unsupported counterclaim. Conversely, if defendants' omission of the counterclaim in their initial answer was an error and an oversight, then the Court sees that as all the more reason to allow the counterclaim to be pleaded now so that plaintiff may not, for example, make a preclusion or waiver argument against defendants on purely technical and formalistic grounds.

The Court also finds it significant that the tables were previously turned on plaintiff's motion to amend. Dkt. No. 47. For that motion, it was TBC that was requesting leave to add a new cause of action to its complaint, and defendants who were arguing that plaintiff in fact knew "all the relevant facts [needed] to plead the [new] claim" when plaintiff filed its initial complaint. Dkt. No. 50 at 3. Just as the Court found in that instance that plaintiff should liberally be granted leave to amend, the Court finds here that defendants should be permitted to go forward on their newly-added counterclaim against plaintiff.

To the extent defendants urge the Court to adopt the "permissive view" on responsive pleadings and find that they had the "right to amend [their] answer to assert a new counterclaim in response to an amended complaint, even if the response is unrelated to the changes made by the

3

1  amended complaint," Dkt. No. 95 at 3, the Court finds it unnecessary and inappropriate to resolve
2  that larger question in the context of this case.  Given that plaintiff's own focus is on defendants'
3  seven-day miss of the June 29, 2015 deadline set by the Court, it is enough to resolve this dispute
4  on the basis that defendants have passed the good cause bar for missing that deadline under Rule
5  16.  Plaintiff has made no arguments under Rule 15, and the Court finds that justice requires that
6  defendants should freely be given leave to amend to assert their negligence counterclaim, even if it
7  may technically have been late.  Plaintiff's motion to strike the counterclaim is consequently
8  denied.

## II.   THE JURY DEMAND

Plaintiff is quite open about the fact that its real complaint with the counterclaim is that defendants are now seeking a jury trial on it, which is the first jury demand in this case.  *See*, *e.g.*, Dkt. No. 94 at 6 (arguing counterclaim should be stricken because "added counterclaim simply ignores the Court's trial date, which was set upon the assumption . . . that a jury would not be needed"); Dkt. No. 98 at 5 ("the chief prejudice which comes from defendants' newly asserted counterclaim is their assertion that they are entitled to a jury trial").  Plaintiff even makes the free-standing request that "even if defendants' counterclaim is not itself stricken . . . , then the belated demand for a jury trial be stricken in the alternative."  *Id*. at 11.  But plaintiff's argument that defendants' jury demand is somehow too late misunderstands the governing law.

As an initial matter, there was never any waiver of defendants' right to demand a jury trial in this case.  Plaintiff's complaint alleges that "[t]his action is within the admiralty jurisdiction of this court pursuant to 28 U.S.C. sections 1331 and 1333, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure."  Dkt. No. 58 ¶ 1.  Rule 38(e) of the Federal Rules of Civil Procedure states clearly that "[t]hese rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)."  Defendants therefore never had any right to request a jury trial on plaintiff's claims against them.  This stands in strong contrast to the facts in *Pyramid Company of Holyoke v. Homeplace Stores Two, Inc.*, 175 F.R.D. 415 (D. Mass. 1997), a case upon which TBC heavily relies, where the plaintiff's complaint alleged breach of contract and sought specific performance or treble

4

damages.  On those facts, the district court observed that "[t]here is no question that [defendant] waived its right to a jury trial when it made no such demand in its original answer."  *Id*. at 418.  That conclusion is inapposite here.  Defendants could not have demanded a jury trial in their original answer because they had no right to it.

Defendants' prior assertion of a negligence affirmative defense does not change the analysis at all.  As courts have recognized, no jury trial right arises from an affirmative defense.  *See*, *e.g.*, *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1102-03 (N.D. Cal. 2007); *Burlington N. R. Co. v. Nebraska Pub. Power Dist.*, 931 F. Supp. 1470, 1486 (D. Neb. 1996); *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1190 (3d Cir. 1979).  Defendants asserted only an affirmative defense and not a counterclaim at the time of their initial answer, and so no jury demand timeline was triggered.  *See*, *e.g.*, Dkt. No. 34 at 3 ¶ 1.

This situation changed only when defendants finally asserted a negligence counterclaim in their answer to plaintiff's amended complaint.  Plaintiff acknowledges that, even though it chose to proceed on its claims without a jury under Rule 9(h) of the Federal Rules of Civil Procedure, defendants retained the right when they asserted a counterclaim to choose whether they wanted to proceed on that counterclaim by way of a jury trial or not.  *See Wilmington Trust v. U.S. Dist. Court for the Dist. of Hawaii*, 934 F.2d 1026, 1032 (9th Cir. 1991) ("We hold that Wartsila's election to proceed in admiralty does not deprive the Union of a jury trial on the Union's properly joined claims.").  Other than arguing that defendants had already waived their right to a jury trial at the time they asserted the counterclaim, *see* Dkt. No. 94 at 9-10, plaintiff does not make any independent argument that there is no right to a jury trial on a negligence counterclaim alleged on the independent and non-admiralty basis of the Court's diversity jurisdiction.  To the extent plaintiff's argument is that defendants should simply have asserted their counterclaim earlier, they had no obligation to do so.

Defendants have asserted a negligence counterclaim now, and for the reasons stated above, the Court finds it appropriate to permit them to go forward on that counterclaim.  Defendants' right to request a jury trial arose once they asserted that counterclaim (and no earlier, hence there was never any waiver by defendants), and they have timely asserted that right.  *See* Dkt. No. 84 at

6 ¶ 6 ("Defendants and counterclaimants hereby demand trial by jury for their counterclaim."). Rule 38 of the Federal Rules of Civil Procedure provides that the right to a jury, whether statutory or constitutional, "shall be preserved inviolate." *See also Wilmington Trust*, 934 F.2d at 1031 ("The United States Supreme Court has held that the right to a jury trial as provided by the seventh amendment overcomes another party's preference for a bench trial when those interests conflict.") (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959)).

Plaintiff protests that allowing defendants' counterclaim to be tried to a jury will "threaten[] both this Court's own scheduling and management of this case [and] threaten[] to increase the cost and length of this dispute exponentially." Dkt. No. 94 at 5. Those professed fears are overheated and unpersuasive. Plaintiff forgets that the civil jury trial is a crowning glory of our legal system and a right that is enshrined in the Seventh Amendment and celebrated and protected in a long and unbroken line of federal decisions. A jury trial never "threatens" the Court's management of its docket. If the Court's case management and scheduling orders need modest adjustment to accommodate a jury trial, changes will be made. The Court assures all the parties that a jury trial will not inflict undue hardship on them.

## III.  AFFIRMATIVE DEFENSES

Defendants asserted nine affirmative defenses in their operative answer. Dkt. No. 84 at 4-5. Plaintiff seeks to strike the fourth, fifth, sixth, eighth and ninth affirmative defenses. Dkt. No. 94 at 11-14.

The Court finds that affirmative defenses should be subject to the same pleading standards that govern complaints as set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See PageMelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012) ("Whether *Iqbal* and *Twombly* apply to affirmative defenses has not been decided by our court of appeals. Within this district, however, there is widespread agreement that they do.") (citing cases). What is required under those cases is to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While at this stage of the case, the Court assumes the truth of the allegations and draws all reasonable inferences in favor of the pleading party, the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If a pleading is found to be insufficient, leave to amend should be granted unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks and citation omitted).

All five of the challenged defenses are wholly conclusory and fail the *Twombly* pleading standard. On that score, it is telling that all five defenses are pled as a single sentence, each sentence comprising three lines of text or less. The one exception to that observation is the eighth affirmative defense, but that is the one that claims that the first amended complaint "fails to state a claim upon which relief may be granted." Dkt. No. 84 at 5. An assertion that the other side has failed to state a claim is not a proper affirmative defense. *See Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 428345, at *3 (N.D. Cal. Jan. 30, 2015) ("This purported defense is not an affirmative defense at all, but merely a statement by defendants that plaintiff's allegations are not sufficient to make out a case.") (citing cases). Perhaps in tacit acknowledgement of this settled point of law, defendants do not even attempt to preserve the eighth affirmative defense in their opposition brief. *See* Dkt. No. 95 at 7-10.

The Court is skeptical about some of the arguments offered by the defendants in defense of the other affirmative defenses at issue, but does not need to resolve that now. They will not be barred as futile at this time. The Court consequently dismisses the eighth affirmative defense with prejudice, but the fourth, fifth, sixth and ninth affirmative defenses are dismissed with leave to amend.

## CONCLUSION

Plaintiff's motion to strike is denied for defendants' counterclaim and defendants' request to try that counterclaim to a jury. Plaintiff's motion to strike the fourth, fifth, sixth, eighth and ninth affirmative defenses is granted, and in the case of the eighth affirmative defense, that

1 dismissal is with prejudice. Defendants may amend by November 25, 2015, their allegations for the fourth, fifth, sixth and ninth affirmative defenses if they so choose. The answer may not be amended in any other way without prior leave of court.

There are a number of motions pending -- and pre-trial deadlines looming -- in this case. The Court moved the hearing on plaintiff's motion for increase in security (Dkt. No. 137) to December 2, 2015, because plaintiff initially provided less than 35 days' notice for that motion in violation of the Civil Local Rules. Dkt. No. 138. For the convenience of the Court and the parties, the Court now continues the hearing on the cross-motions for partial summary judgment (Dkt. Nos. 108, 121) from November 18, 2015, to December 2, 2015, at 10 a.m. as well.

The Court will hold a case management conference immediately following the hearing on those motions (Dkt. Nos. 108, 121, 137) on December 2, 2015, at 10 a.m. The remaining pre-trial deadlines are temporarily suspended until that time.

The parties are directed to file by November 25, 2015, a comprehensive, joint status statement that includes a list of all pending motions and issues requiring resolution by the Court and the parties' proposed dates for the pre-trial document filing deadline, final pre-trial conference and trial. The parties should also meet and confer about, and include in the status statement their views on, how, if at all, the trial should be divided as between a jury and the bench in light of this order. The Court observes, but does not decide at this time, that trying all claims to the jury would likely be the most sensible and efficient way to proceed. *See*, *e.g.*, *Wilmington Trust*, 934 F.2d at 1032 ("We note that our holding may result in the entire case being tried before a jury. This result is likely to occur if all the claims are closely related factually."); *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1057 (9th Cir. 1997) ("Although the right to jury trial in the instant case derives from the savings to suitors clause rather than a statutory grant such as the Jones Act, the reasoning of *Fitzgerald* is equally persuasive and justifies a jury trial over all four claims, where the in rem claim arises out of the same factual circumstances as the other three claims.").

**IT IS SO ORDERED.**

Dated: November 13, 2015

_____
JAMES DONATO
United States District Judge

8